**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROYAL SUN ALLIANCE INSURANCE, PLC, | : : : | CIVIL ACTION NO. 09-2862 (MLC) |
| Plaintiff, | : : | **MEMORANDUM OPINION** |
| v. | : : | |
| NATIONAL CONSOLIDATION SERVICES LLC, et al., | : : : | |
| Defendants. | : : | |

**COOPER, District Judge**

Plaintiff brought this action for breach of contract under the Carmack Amendment, 49 U.S.C. § 14706, against defendants, National Consolidation Services LLC ("NCS") and Roadco Transportation Services, Inc. ("Roadco" and, with NCS, "defendants"). (Dkt. entry no. 22, Am. Compl.) NCS raised an affirmative defense claiming that Plaintiff's damages are barred or limited by certain limitation of liability provisions. (Dkt. entry no. 23, NCS Answer at ¶ 45.) Plaintiff now moves for summary judgment in its favor on NCS's limitation of liability defense. (Dkt. entry no. 33, Mot. for Summ. J.)

**BACKGROUND**

**I. The Parties**

Plaintiff is the subrogated insurer for LifeScan, a manufacturer of diabetic testing kits. (Dkt. entry no. 39, NCS

Br. at 1-2.)  NCS is a "third-party logistics and supply chain management company" that designs and manages freight consolidation services and distribution management services to, and for, manufacturers.  (Id. at 2.)  Roadco is an interstate motor carrier.  (Id.)

This action arose on August 28, 2008, when a shipment of diabetic testing kits was shipped by LifeScan from Mechanicsburg, Pennsylvania, via Roadco truck.  (Dkt. entry no. 34, Pl. Br. at 3; NCS Br. at 8.)  The shipment was destined for an NCS distribution center in Illinois supplying Walgreens drugstores.  (NCS Br. at 8.)  The Roadco truck was stolen en route, and later recovered empty and abandoned on the Ohio Turnpike.  (Am. Compl. at ¶¶ 17-20; Pl. Br. at 3.)  The shipment was never recovered, and Plaintiff, as the insurer of the shipment, paid damages of $4,231,395.74 to LifeScan for the stolen diabetic testing kits.  (Am. Compl. at ¶ 22.)  Plaintiff now seeks to recover damages up to or exceeding that amount from defendants.  (Id. at ¶¶ 24, 27.)

**II.   Shipping Agreements Between LifeScan and NCS**

**A.   Pricing List**

The agreement between LifeScan and NCS for NCS to ship LifeScan products to Walgreens distribution centers and retail stores originated in May 2005.  (NCS Br. at 2.)  Following a period of negotiation, NCS issued to LifeScan a pricing list showing rates to different Walgreens distribution centers on May

2

17, 2006, which by its terms purported to expire one year from that date. (Dkt. entry no. 35, Eagan Decl., Ex. 9, Pricing List (signed by Mike Matthews of LifeScan and Larry McIntyre of NCS); see also dkt. entry no. 39, McIntyre Aff., Ex. G, Pricing List (undated, but also signed by Matthews and McIntyre).)[1] The Pricing List states, "All shipments governed by NCS Rules Tariff 100 series, including liability coverage."

    **B.   NCS Tariff**

The NCS Rules Tariff 100 ("NCS Tariff") provides additional terms for the shipping agreement between NCS and LifeScan, as it is expressly incorporated in the Pricing List. (Id.; Eagan Decl. Ex. 10, NCS Tariff; McIntyre Aff., Ex. B, NCS Tariff.) Item 872 of the NCS Tariff provides:

> Item 872 – Restricted articles and value limitations
>
> Articles with an invoice value exceeding $10.00 per pound will be considered to have a value of $10.00 per pound. In the event of loss or damage to any shipment, liability will not exceed $10.00 per pound, subject to a maximum liability of $100,000.00, whichever is lower. The liability is based on the weight of the articles lost or damaged, not the weight of the entire shipment.

---

[1] McIntyre states that he prepared and faxed to Matthews the May 17, 2006 Pricing List, that when Matthews returned it to him there was no date listed in the line for "effective" date, and that he never became aware of any copy or version of the final Pricing List that had an effective date listed. (McIntyre Aff. at ¶¶ 30-32.) McIntyre asserts that there was never discussion between LifeScan and NCS concerning the expiration of the Pricing List and states that the parties understood that the Pricing List was to remain in full force beyond the original one year period. (McIntyre Aff. at ¶ 34.)

> Liability for all articles subject to released rates and so noted on the bill of lading, will be subject to the RVNX [Reasonable Value Not Exceeding] limits as contained in the NMFC [National Motor Freight Classification].

(Id.)  The nine invoices correlating to each of the nine bills of lading establish that the entire shipment was valued at $4,317,852.  (Eagan Decl., Ex. 4-B.)  The bills of lading demonstrate that the total weight of the shipment was 12,685 pounds.  Thus, relying on the invoices and bills of lading prepared by LifeScan, the Court determines that the value per pound of the shipment was $340.39 – significantly greater than the $10.00 per pound or $100,000 aggregate limit the NCS Tariff purported to place on its liability for the shipment.

    **C.  Bills of Lading**

The bills of lading for the particular shipment at issue here were prepared and issued by LifeScan.  (McIntyre Aff. at ¶ 43 & Ex. H, Bills of Lading; dkt. entry no. 35, Matthews Decl., Ex. 4-C, Bills of Lading; Am. Compl. at ¶ 12.)  The nine separate bills of lading for the shipment list a NMFC number of 56790-2 and list the class of goods as 55.  (Id.)[2]  On each of the Bills of Lading, a box titled "Shipper Signature/Date" is signed and dated below text stating, "This is to certify that the above

---

[2] Under the National Motor Freight Classifications, the higher the class number of a particular commodity, the higher the associated tariff-based freight rate.  (NCS Br. at 3.)

named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation. . . ." (Bills of Lading.) Another area on each Bill of Lading states, "Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property as follows: 'The agreed or declared value of the property is specifically stated by the shipper to be not exceeding _____ per _____.'" (Id.) The Bills of Lading further contain text stating:

> RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rates, classifications and rules that have been established by the carrier and are available to the shipper, on request, and to all applicable state and federal regulations.

(Id.) In noticeably larger text is written, "Note Liability Limitation for loss or damage in this shipment may be applicable. See 49 U.S.C. - 14706(c)(1)(A) and (B)." (Id.)

**DISCUSSION**

**I.  Applicable Legal Standards**

   **A.  Carmack Amendment**

The Carmack Amendment "provides for liability of common carriers for damage to or loss of goods during shipment." S&H Hardware & Supply Co. v. Yellow Transp., Inc., 432 F.3d 550, 554 (3d Cir. 2005). It imposes full liability upon carriers for "the actual loss or injury to the property caused by" a carrier

contractually bound to deliver goods on bills of lading. 49 U.S.C. § 14706(a)(1). A bill of lading is both a receipt and a transportation contract between a seller of goods and a carrier. EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046, 1050 (3d Cir. 1993).

To prevail on a claim under the Carmack Amendment, a shipper must prove "(1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) amount of damages." Beta Spawn, Inc. v. FFE Trans. Serv., Inc., 250 F.3d 218, 223 (3d Cir. 2001) (citation omitted). The burden then shifts to the carrier to prove both that it was not negligent, and that one of the five exceptions to the strict liability imposed by the Carmack Amendment caused the loss: an act of God, the public enemy, the act of the shipper itself, public authority, or the inherent vice or nature of the goods. Id. at 226; see also Mo. Pac. R. Co. v. Elmore & Stahl, 377 U.S. 134, 137-38 (1964).

The Carmack Amendment, as amended, permits a carrier to limit its liability for damage to or loss of goods under certain circumstances. The liability limiting provisions state:

> (c) Special rules.--
>     (1) Motor carriers.--
>         (A) Shipper Waiver.-- Subject to the provisions of subparagraph (B), a carrier providing transportation or service . . . may . . . establish rates for the transportation of property (other than household goods described in section 13102(10)(A))

> under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.
> (B) Carrier notification.-- If the motor carrier is not required to file its tariff with the [Surface Transportation] Board, it shall provide under section 13710(a)(1) to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based.  The copy provided by the carrier shall clearly state the dates of applicability of the rate, classification, rules, or practices.

49 U.S.C. § 14706(c).  Section 13710(a)(1) provides that "A motor carrier of property . . . shall provide to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices, upon which any rate applicable to its shipment or agreed to between the shipper and carrier is based."  49 U.S.C. § 13710(a)(1).

In order to deviate from the Carmack Amendment's default imposition of full liability under these provisions, a carrier must give the shipper a reasonable opportunity to choose between two or more levels of liability.  Emerson Elec. Supply Co. v. Estes Express Lines Corp., 451 F.3d 179, 187 & n.6 (3d Cir. 2006).  To satisfy this requirement, "a carrier must offer two or more shipping rates with corresponding levels of liability for one type of shipment."  Id. at 188 (citing N.Y., New Haven &

7

Hartford R.R. v. Nothangle, 346 U.S. 128, 134 (1953)); see also Carmana Designs Ltd. v. N. Am. Van Lines Inc., 943 F.2d 316, 320 (3d Cir. 1991) ("A reasonable opportunity to choose between different levels of coverage means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice.") (internal quotation and citation omitted).

    **B.**    **Summary Judgment Standard**

The standard for a motion for summary judgment is well-settled and will be briefly summarized here.  Summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."  United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

**II.**  **Application of Legal Standards**

Plaintiff contends that NCS should be barred from presenting a limitation of liability defense because it did not effectively limit its liability under the Carmack Amendment in the contract

between the parties for the transportation of the shipment at issue. In support of this argument, Plaintiff contends that (1) the Pricing List is expired, (2) the NCS Tariff, even if it applies, does not provide a choice between two or more levels of liability with corresponding rates, and (3) the Bills of Lading are deemed "receipts of freight and not contracts" under the NCS Tariff and so cannot provide an effective limitation of liability. (Pl. Br. at 2, 15; dkt. entry no. 40, Reply Br. at 3.)

NCS asserts that the Pricing List remained in effect until after the loss of the shipment at issue occurred, that LifeScan had notice that the NCS Tariff would apply to all shipments under the Pricing List, that the terms of the NCS Tariff were readily available to LifeScan upon request, and that Item 872 of the NCS Tariff operates as an effective limitation of liability. (NCS Br. at 3-4.)

Viewing the facts presented in the light most favorable to NCS, as we must at the summary judgment stage, we find that a genuine issue of material fact exists as to whether the Pricing List was in effect at the time of the loss. See supra at n.1. (Compare Pl. Br. at 17 & Eagan Decl. Ex. 9, Pricing List, with McIntyre Aff. at ¶¶ 24, 30-37, and dkt. entry no. 39, Ex. 2, Gulbinas Aff. at ¶¶ 7-14.) Accordingly, for purposes of this motion, we will assume without finding that the Pricing List was

in effect at the time of the loss.  The Pricing List expressly states that all shipments are to be "governed by NCS Rules Tariff 100 series, including liability coverage."  (Pricing List.)  Thus, we turn to the NCS Tariff to determine if terms therein comply with the requirement of providing the shipper a reasonable opportunity to choose between two or more levels of liability.[3]

The NCS Tariff limits liability for loss or damage of articles in transit to the lesser of $10.00 per pound or $100,000.00 per shipment.  NCS provided the following response to a discovery request propounded by Plaintiff seeking "[a]ll documents containing the 'RVNX limits as contained in NMFC' as described in NCS' Rules Tariff 100":  ". . . the Cargo at issue was not subject to released rates and nothing was noted on the bill of lading.  Thus, the RVNX limits as contained in the NMFC do not apply."  (Eagan Decl., Ex. 7, NCS Responses to Pl.'s Requests for Production of Documents at ¶ 6.)

This discovery response indicates that under Item 872 of the NCS Tariff, LifeScan <u>could</u> have selected a different release rate on the bill of lading, which would have resulted in a liability limit of "the RVNX limits as contained in the NMFC."  (NCS Tariff at 6.)  The Bills of Lading have a place for the shipper to

---

[3] Because we must view this factual dispute in the light most favorable to NCS, we cannot give credence to Plaintiff's assertion that the Pricing List "expired May 17, 200[7] prior to the shipment at issue . . . thus here NCS had no tariff in effect covering this loss."  (Pl. Br. at 17.)

10

declare "specifically in writing the agreed or declared value of the property." (Bills of Lading.) The record in this case indicates that LifeScan and NCS agreed to the particular pricing schedule set in the Pricing List, including the fact that LifeScan's freight would be billed as class 55 despite actually being class "CL150-500." (Dkt. entry no. 39, James Decl., Ex. 1, E-mail Chain Between Mike Matthews, Larry McIntyre, and Bill Duffy.) Thus, LifeScan had a meaningful opportunity to negotiate a particular shipping rate, which incorporated NCS's limitation of liability in the NCS Tariff, which in turn was subject to the alternative of "the RVNX limits as contained in the NMFC" if so noted on the bill of lading. See Travelers Prop. Cas. Co. of Am. v. A.D. Trans. Express, Inc., No. 04-5830, 2007 WL 2571957, at *4-*5 (D.N.J. Aug. 31, 2007) (finding that defendant effectively limited liability based on the shipping documents and the course of dealing between shipper and carrier, and noting that shipper did not declare a valuation in the "Value" box on the bill of lading prepared by the shipper); accord Tirgan v. Roadway Package Sys., Inc., No. 94-2768, 1995 WL 21098, at *3-*4 (D.N.J. Jan. 3, 1995). LifeScan did not opt to choose this alternative in preparing the Bills of Lading--it instead listed the shipping

11

rate as the class 55 it had previously negotiated--but it apparently could have.[4]

We find that summary judgment in Plaintiff's favor on NCS's limitation of liability defense is inappropriate at this juncture.  At the very least, NCS has presented evidence raising a genuine issue of material fact as to whether it effectively limited its liability through the Pricing List and the NCS Tariff by offering LifeScan a reasonable opportunity to choose between at least two levels of liability.  Accordingly, Plaintiff's motion will be denied.

## CONCLUSION

The Court, for the reasons stated <u>supra</u>, will deny Plaintiff's motion.  The Court will issue an appropriate order separately.

s/ Mary L. Cooper<br>
**MARY L. COOPER**<br>
United States District Judge

Dated:   June 4, 2010

---

[4] Because the limitation of liability language occurs in the NCS Tariff, we make no determination as to whether the Bills of Lading are properly considered "contracts" or merely "receipts."